UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

Case No. 25-50310

CLOVERLEAF ELECTRIC, LLC, et al.,[1]

Chapter 11
Debtors.                                      Jointly Administered

_____/             Judge Thomas J. Tucker

CLOVERLEAF ELECTRIC, LLC,

Plaintiff,

v.                                            Adv. No.  25-4217

UNITED STATES SMALL BUSINESS
ADMINISTRATION, *et al.*,

Defendants.

_____/

**OPINION AND ORDER: (A) GRANTING, IN PART, THE PARTIAL MOTION TO
DISMISS FILED BY DEFENDANT UNITED FIRST, LLC; (B) SUSTAINING, IN PART,
THE PLAINTIFF'S OBJECTION TO THE CLAIM FILED BY UNITED FIRST, LLC;
(C) GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT; AND (D)
GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED OBJECTION TO CLAIM**

## I.  Introduction

This adversary proceeding presents a dispute between the Plaintiff, a Chapter 11

bankruptcy debtor, and a Defendant that provided financing to the Debtor pre-petition, under

what is commonly known as a merchant cash advance agreement ("MCA Agreement").

Now before the Court is the partial motion to dismiss jointly filed by Defendants United

First, LLC and RDM Capital Funding, LLC (the "Movants") (Docket # 29, the "Motion").  The

_____

[1]  The Debtors in these jointly administered cases are Cloverleaf Electric, LLC (Case No. 25-50310) and Shawn Michael Hosner (Case No. 25-50313).

Plaintiff filed a response objecting to the Motion, and the Movants filed a reply. The Court held a hearing, and took the Motion under advisement.

Shortly before the hearing, and also during the hearing, the parties informed the Court that the Plaintiff had reached a settlement of its claims against RDM Capital Funding, LLC ("RDM"), so the Court has deemed the Motion to be settled, as to RDM. By a stipulated order entered on May 14, 2026, RDM was dismissed from this adversary proceeding.[2] The Motion remains pending for decision, as to United First, LLC ("UF").

The Court has considered all of the written and oral arguments of the parties, as well as the supplement filed by UF the day after the hearing.[3] For the reasons stated below, the Court will grant the Motion in part, but also will grant the Plaintiff leave to file an amended complaint.

Also before the Court is an objection that the Plaintiff filed to the proof of claim filed by UF in the Plaintiff's bankruptcy case. For the reasons stated below, the Court will sustain that claim objection in part, and also will grant the Plaintiff leave to file an amended claim objection.

## II. Background and facts

### A. Procedural background

UF is now the only defendant left in this adversary proceeding. Originally, the Plaintiff's Complaint contained ten counts, and named seven defendants. Six of those defendants, including UF, are parties that provided pre-petition financing to the Plaintiff under one or more MCA agreements. In the months after filing its Complaint, the Plaintiff obtained a default judgment against one of the Defendants, and settled its claims against all of the other Defendants,

---

[2] Docket # 64.

[3] Docket # 58.

2

except UF.  Six of the counts in the Complaint are directed at UF, among other defendants. Those are Counts I through IV, IX, and X.

UF's Motion seeks dismissal of three of the counts — Counts II, III, and IV.  All of these counts concern an agreement between the Plaintiff and UF, entitled "Purchase and Sale of Future Receipts Agreement" (the "UF Agreement").[4]  The parties entered into the UF Agreement on April 15, 2025.[5]  The Court will describe some of the terms of this agreement, as relevant to the present Motion.

### B.  The UF Agreement

According to the UF Agreement, UF purchased $576,702.00 of the Plaintiff's "Future Receipts," for a purchase price of $398,000.00.[6]  The UF Agreement defined "Future Receipts," in pertinent part, as "the proceeds of each future sale made by [the Plaintiff]" and "all remittances received by [the Plaintiff], or its right to receive such remittances, in the ordinary course of [the Plaintiff's] business, including but not limited to (a) remittances made by cash, check, Automated Clearing House . . . or other electronic transfer; (b) remittances, or rights to remittances, made by credit card, debit card, bank card, charge card . . .; (c) accounts and remittance intangibles; and (d) remittances made by any other form."[7]  In exchange for the purchase price, the Plaintiff gave UF access to its bank account, and permitted UF to debit that

---

[4]  A copy of the UF Agreement is attached to the Plaintiff's Complaint as Exhibit E (Docket # 1-6).

[5]  *See* Compl. at ¶ 28; UF Agreement (Docket # 1-6) at pdf p. 2 (defining April 15, 2025 as the "Contract Creation Date").

[6]  *See* UF Agreement (Docket # 1-6) at pdf p. 3.

[7]  *Id.*

bank account each business day at the rate of $13,399.00 per week, until the $576,702.00 in Future Receipts was paid to UF. The $13,399.00 weekly payment amount, defined as the "Periodic Amount," was stated to be an estimated 17% (the "Specified Percentage") of the Plaintiff's Future Receipts.[8] The UF Agreement estimated that it would take 43 weeks of payments by the Plaintiff to pay UF the $576,702.00 in Future Receipts purchased.[9]

The UF Agreement stated that the transaction was not a loan, but rather a sale of Future Receipts. For example, on the fifth page of the agreement, in the "Terms and Conditions" section, the parties agreed as follows:

> **3. Nonrecourse Sale of Future Receipts (THIS IS NOT A LOAN)**. Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or remittance schedule and no time period during which the Purchased Amount must be collected by Buyer. . . . By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat the Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns.[10]

Later in the Terms and Conditions, the UF Agreement states that the sale of the Plaintiff's Future Receipts "shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and

---

[8] *See id.* at pdf pp. 2, 5 ¶¶ 1, 2. The UF Agreement stated that the "Periodic Amount" could be adjusted on request by either party "to more closely reflect the [Plaintiff's] actual Future Receipts times the Specified Percentage." *See id.* at pdf p. 5 ¶ 2.

[9] *See id.* pdf p. 3.

[10] *See id.* at pdf p. 5 ¶ 3 (bold in original).

4

encumbrances, from Seller to Buyer."[11]  But in the same paragraph the agreement also states that

the Plaintiff's sale of the Future Receipts created a security interest in the Future Receipts:

> **a. Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "payment intangibles" then (I) the sale of the Future Receipts creates a security interest as defined in the UCC; (II) this Agreement constitutes a "security agreement" under the UCC; and (III) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts.[12]

## C.  UF's proof of claim

UF timely filed a proof of claim (Claim 22-1) in the Plaintiff's bankruptcy case, in the

amount of $281,924.00.[13]  As the basis of that claim, UF alleged "Breach of Purchase and Sale of

Future Receipts Agreement."[14]  The claim also stated that UF's claim is "secured by a lien on

property" with a value in the full amount of the claim, namely, "Accounts/Future Receipts," and

that the lien is perfected by a "UCC Financing Statement."[15]  A copy of the UF Agreement and a

---

[11]  *Id.* at pdf p. 7 ¶ 12.a.

[12]  *Id.* (bold in original).

[13]  Claim No. 22-1, filed February 10, 2026 in Case No. 25-50310, at 2.  On the same day it filed the proof of claim in the Plaintiff's case, UF filed a virtually identical proof of claim in the jointly administered Chapter 11 case of Shawn Hosner (Claim 17-1 in Case No. 25-50313).  In the Shawn Hosner case, the basis of the claim was stated as "Breach of Performance Guaranty."  (*Id.* at pdf p. 2).

[14]  *Id.*

[15]  *Id.*

5

UCC Financing Statement are attached to the proof of claim.

**D. The Plaintiff's Complaint in this adversary proceeding**

Of the six counts in the Plaintiff's Complaint that are directed at UF (Counts I through IV, IX, and X), all but one of the counts (Count X) also were directed at other Defendants. In describing the counts for purposes of this Opinion, however, the Court will focus only on UF. (As noted above, in the present Motion, UF seeks the dismissal of Counts II, III, and IV.)

In Count I, the Plaintiff seeks a determination under 11 U.S.C. § 506(a)(1) that UF's security interest in the Plaintiff's future "accounts" and "payment intangibles" is entirely unsecured, because the Small Business Administration has first-priority liens in all the Plaintiff's assets, and those prior liens secure debts that in combination are much larger than the value of the Plaintiff's assets.[16]

In Count II, the Plaintiff seeks a declaratory judgment that the UF Agreement is a loan transaction, rather than a sale, "subject to the laws applicable to and governing loans."[17]

In Count III, the Plaintiff seeks a declaratory judgment that the UF Agreement "effected no sale or transfer of property,"[18] because the purported sale of the Plaintiff's Future Receipts and receivables was impossible. That is so, the Plaintiff alleges, because the Plaintiff's "[F]uture [R]eceipts and receivables did not exist at the time of the 'sale' of these items[, and a] present sale of rights to payment that do not exist is a metaphysical and legal impossibility."[19] And, the

---

[16] *See* Compl. (Docket # 1) at pdf pp. 13-15.

[17] *See id.* at pdf p. 15 ¶ 39 - pdf p. 17.

[18] *Id.* at pdf p. 18, "Wherefore" clause.

[19] *Id.* at pdf pp. 17-18 ¶ 43.

Plaintiff alleges, to the extent UF seeks "to assert a lien in the proceeds of the [Plaintiff's] . . . future accounts receivable, the attempted lien of such an asset is a legal fallacy."[20]

In Count IV, the Plaintiff seeks a declaratory judgment that the UF Agreement "violated state usury laws and [is] therefore unenforceable."[21] This count also alleges that the UF Agreement "[is] unconscionable within the meaning of UCC § 2-302, and [is a] contract[] of adhesion."[22]

In Count IX, the Plaintiff seeks to avoid, under 11 U.S.C. § 547(b), and recover, alleged preferential transfers made by the Plaintiff to UF during the 90 day pre-petition period, totaling $133,990.00.[23]

In Count X, the Plaintiff seeks the disallowance of any claim by UF, on two grounds: first, because any such claim "include[s] unmatured interest which must be disallowed pursuant to 11 U.S.C. § 502(b)(2)[;]" and second, under 11 U.S.C. § 502(d), because of the Plaintiff's avoidance claim.[24]

### E. The Plaintiff's objection to UF's proof of claim

On February 13, 2026, three days after UF filed its proof of claim, the Plaintiff filed an objection to the claim in the main bankruptcy case (the "Claim Objection").[25] The Claim

---

[20] *Id.*

[21] *See id.* at pdf p. 19, "Wherefore" clause.

[22] *Id.* at pdf p. 18 ¶ 47.

[23] *See id.* at pdf p. 12 ¶ 30; pdf pp. 23-24.

[24] *See id.* at pdf pp. 24-25.

[25] "Debtor's Objection to Claim No. 22 Filed by United First, LLC" (Docket # 76 in Case No. 25-50310). To date, Shawn Hosner has not filed an objection to the proof of claim filed by UF in his

Objection seeks an order disallowing UF's claim entirely, or alternatively, an order allowing the claim as an unsecured claim. As the grounds for this relief, the Claim Objection relies on certain counts of the Plaintiff's Complaint in this adversary proceeding.[26]

After UF filed a response to the Claim Objection, the Court held a hearing on the Claim Objection and on the Motion, and in an Order filed April 22, 2026, the Court consolidated the Claim Objection with this adversary proceeding, "so that [the Claim Objection] may be decided on the merits along with the claims in the adversary proceeding."[27]

### F. The Plaintiff's confirmed Chapter 11 plan

On January 12, 2026, before UF filed its proof of claim, the Plaintiff filed its proposed plan of reorganization, jointly with Shawn Hosner, in the main case (the "Plan").[28] The Plan did not classify or treat UF as a secured creditor. Rather, the Plan listed UF as an unsecured creditor of the Plaintiff, in an "unknown" amount.[29] The Plan also stated:

> United First, LLC was listed in the Debtors' schedules as
> contingent, unliquidated and disputed, and is therefore not
> considered an allowed claim absent the filing of a proof of claim in
> the case. The claims bar date in this case is set for February 10,
> 2026, which is a date after the deadline for filing the Plan. As of
> the date of filing of the Plan, United First has NOT filed a proof of

case.

[26] The Claim Objection also relies on arguments made in a brief the Plaintiff filed early in the bankruptcy case, in support of the Plaintiff's motion for authority to use cash collateral (Docket # 24 in Case No. 25-50310). Those arguments are the same as those made in Counts I and III of the Plaintiff's adversary Complaint, described above.

[27] "Order Consolidating the Debtor's Objection to Claim No. 22 of United First, LLC with Adversary Proceeding No. 25-4217" (Docket # 112 in Case No. 25-50310).

[28] Docket # 71 in Case No. 25-50310.

[29] *Id.* at 12.

claim and accordingly, will not be included for purposes of
distribution until and unless it does file a proof of claim and that
claim is allowed.[30]

The Plan treated the claim of UF against the Plaintiff, to the extent it ever was allowed in any amount, as included in Class XI, the class of the Plaintiff's non-priority unsecured creditors.[31] The Plan proposed to pay the claims in that class, pro rata, a total of $113,131.00 in 60 monthly payments.[32]

UF did not vote to accept or reject the Plan. (Five creditors in Class XI did vote, and all of them accepted the Plan.)[33] Nor did UF file any objection to the confirmation of the Plan. The Court entered an order confirming the Plan on March 5, 2026.[34]

## III. Standards governing Rule 12(b)(6) motions

In deciding the Motion, the Court has applied the standards it has previously held to be applicable to motions under Fed. R. Civ. P. 12(b)(6), which applies in this adversary proceeding under Fed. R. Bankr. P. 7012(b). Those standards were described in detail in this Court's opinion in *Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 770-72 (Bankr. E.D. Mich. 2011), and the Court incorporates by reference what it said in that opinion about the Rule 12(b)(6) standards.

---

[30] *Id.* at 12 n.9 (capitalization in original).

[31] *See id.* at 23.

[32] *See id.* at 23-24. The Plan also listed UF as having a non-priority unsecured claim against Shawn Hosner of $40,197.00. (*See id.* at 12-13). The Plan treated the non-priority unsecured creditors of Shawn Hosner in Class XII, and proposed to pay the allowed claims in that class, pro rata, a total of $24,000.00, in 60 monthly payments. (*See id.* at 24).

[33] *See* "Chapter 11 Ballot Summary" (Docket # 82 in Case No 25-50310) at 3.

[34] *See* Order Confirming the Jointly Administered Debtors' Plan of Reorganization Under 11 U.S.C. § 1191(b) . . ." (Docket # 88 in Case No. 25-50310).

9

## IV.  Discussion

### A.  The nature of declaratory relief

As noted above, Counts II, III, and IV of the Complaint each seek a declaratory judgment. UF's first and primary argument concerns the nature of declaratory relief.  UF argues that declaratory relief is not an independent cause of action.  To be viable, UF argues, a claim for declaratory relief must be "connected to" or "linked to" a substantive cause of action.[35]  UF argues that Counts II, III, and IV are not connected to any substantive cause of action, so they must be dismissed.

UF is correct about the nature of declaratory relief.  As this Court recently held in another case involving MCA creditors:

> "The Declaratory Judgment Act [28 U.S.C. § 2201] is procedural in nature and 'does not create an independent cause of action' that can be invoked absent some showing of an articulated legal wrong."  *Doe v. University of Dayton*, 766 F. App'x 275, 291 (6th Cir. 2019) (citation omitted); *see also Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007) (citation omitted) ("§ 2201 does not create an independent cause of action."); *see also Littler v. Ohio Ass'n. of Public School Employees*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023) (citations omitted) (explaining that "the Declaratory Judgment Act 'is only procedural, leaving substantive rights unchanged,'" and holding that the plaintiff's declaratory judgment request failed when her related substantive claim failed).

*Heritage Collegiate Apparel, Inc. v. Elemental Cap., Inc.* (*In re Heritage Collegiate Apparel, Inc.*), 676 B.R. 773, 786-87 (Bankr. E.D. Mich. 2026).

The Court agrees with UF's argument, with respect to Count IV, but the Court disagrees with UF's arguments about Counts II and III.

---

[35]  Mot. (Docket # 29) at 9, 12.

**B. Counts II and III are viable claims for declaratory relief.**

Counts II and III are both sufficiently connected to, and support, a substantive claim in the Complaint — namely, Count IX. Count IX seeks to avoid and recover $133,990.00 in pre-petition transfers the Plaintiff made to UF, as preferences under 11 U.S.C. § 547(b). One of the necessary elements for such avoidance, which is alleged in Count IX, is that each transfer was made to UF "for or on account of antecedent debt owed by the debtor before such transfer was made." 11 U.S.C. § 547(b)(2); *see* Complaint at ¶ 72. The declaratory relief sought in Count II supports that Count IX allegation, because Count II seeks a declaration that the UF transaction was a "loan transaction," rather than an outright sale of future receivables. If the transaction was a loan, rather than a sale, then the Plaintiff owed an antecedent debt to UF when the transfers at issue were made.

The declaratory relief sought in Count III also supports the "antecedent debt" element in Count IX, because Count III seeks a declaration that the UF transaction did not validly transfer any future accounts or other property interest of the Debtor to UF. Count III is another theory, in addition to the theory of Count II, that would negate UF's position that when the pre-petition transfers alleged in Count IX were made, the Debtor was simply paying over to UF property already owned by UF. If that is not the case, then UF was a creditor of the Plaintiff and the transfers were for an antecedent debt owing by the Plaintiff to UF.

Count III also supports another element for preference avoidance under § 547(b) — *i.e.*, that the transfers were transfers "of an interest of the debtor in property." *See* 11 U.S.C. § 547(b) (opening paragraph).

Another necessary element for avoidance of the transfers under Count IX is the so-called

11

"more than" test under 11 U.S.C. § 547(b)(5). The declaratory relief sought in Count III supports satisfaction of that test, because it would show that when UF received the transfers at issue, it was at most a wholly unsecured creditor.[36]

For these reasons, Counts II and III state viable claims for declaratory relief.[37]

**C. Count IV is not a viable claim for declaratory relief.**

As for Count IV of the Complaint, the Court agrees with UF's argument. The declaratory

---

[36] Under 11 U.S.C. § 547(b)(5), the Plaintiff must prove that the transfer at issue "enables such creditor to receive more than such creditor would receive if — (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title." As a general rule, this element requires the Plaintiff to prove that in a Chapter 7 liquidation the unsecured creditors would receive payment of less than 100% of their claims. As this Court has noted in other cases,

> This element, referred to by the Sixth Circuit as the "'more than' test," "require[s] the bankruptcy court to construct a 'hypothetical Chapter 7 case,' i.e., to determine what the creditor would have received in a liquidation." *Still v. Rossville Bank* (*In re Chattanooga Wholesale Antiques, Inc.*), 930 F.2d 458, 461 n.1, 464 (6th Cir. 1991). The test requires the Court to determine what distribution would be made in such a hypothetical Chapter 7 liquidation to the creditor who received the challenged transfer (or the creditor for whose benefit the transfer was made), assuming that the transfer had not been made. In a case such as this, where the transferee of the transfer . . . and the alleged transfer beneficiary . . . are both non-priority, unsecured creditors of the Debtor, the following rule applies:
>
>> Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation.
>
> *Id.* at 465 (citation omitted).

*Madden v. Morelli* (*In re Energy Conversion Devices, Inc.*), 548 B.R. 208, 222 (Bankr. E.D. Mich. 2016) (quoting *Shapiro v. Art Leather, Inc.* (*In re Connolly North America, LLC*), 398 B.R. 564, 571 (Bankr. E.D. Mich. 2008)).

[37] That is not to say that the Plaintiff ultimately will prevail on these Counts.

12

relief sought in Count IV does not support the Count IX preference claim.  Nor is Count IV supportive of any other substantive claim against UF in the Complaint.  In Count IV, the Plaintiff seeks a declaration that the UF Agreement is unenforceable, because it is a loan agreement that violates state usury law, and also because it is "unconscionable" and a "contract[] of adhesion." That declaratory relief, if obtained, would actually negate the Plaintiff's Count IX preference claim, rather than support it, because it would show that when the allegedly preferential transfers were made, UF was not actually a creditor of the Plaintiff, since UF actually was not owed any "antecedent debt" by the Plaintiff.  Such declaratory relief might tend to support a constructive fraudulent transfer claim, by establishing the element that the Plaintiff "received less than a reasonably equivalent value in exchange for [the] transfer[s]" (such as satisfaction of antecedent debt).  *See, e.g.*, 11 U.S.C. § 548(a)(1)(B)(i).  But the Plaintiff's Complaint contains no such fraudulent transfer claim.

For these reasons, UF is correct that the declaratory relief sought in Count IV is not supportive of any substantive claim in the Plaintiff's Complaint.  As such, it fails to plausibly allege a claim for declaratory relief upon which relief can be granted, and must be dismissed.

The Plaintiff argues that in deciding whether its claims for declaratory relief are viable, this Court should consider the factors outlined by the Sixth Circuit in the case of *Grand Trunk Western Railroad Co. v. Consolidated Rail Corporation*, 746 F.2d 323 (6th Cir. 1984), and that those factors favor declaratory relief here.  But those factors do not support granting the declaratory relief sought in Count IV of the Complaint.

In *Grand Trunk*, 746 F.2d at 325 (citation omitted), the Sixth Circuit held that "the granting of a declaratory judgment rests in the 'sound discretion' of the court," and held as

13

follows:

> We apply the following general principles in determining whether a declaratory ruling is appropriate:
>
>> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.
>
> We thus consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* at 326 (citations omitted).

These factors do not favor granting the declaratory relief sought in Count IV of the Complaint, because that relief is not supportive of any substantive claim the Plaintiff asserts against UF. Such declaratory relief would not "serve a useful purpose in clarifying and settling the legal relations in issue," and would not "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *See id.* And of the five numbered *Grand Trunk* factors quoted above, factor nos. 1 and 2 disfavor declaratory relief, and factor nos. 3-5 are neutral. Thus, the Plaintiff's argument based on *Grand Trunk* is unpersuasive, as to Count IV.

14

In ruling that Count IV must be dismissed, the Court notes that this case involves a somewhat unusual situation, in that the Court has consolidated the Plaintiff's Claim Objection into this adversary proceeding. Because the Claim Objection is consolidated with the Plaintiff's Complaint, the Court has considered whether Count IV is supportive in any way of the Claim Objection, so as possibly to make Count IV a plausible claim for declaratory relief. The Court concludes that Count IV is not supportive of the Claim Objection, however, because the Claim Objection does not include any substantive claim against UF. Rather, the Claim Objection is only defensive in nature; it alleges defenses to the claim filed by UF in the main bankruptcy case. That is not sufficient to state a plausible claim for declaratory relief.

The Claim Objection includes, defensively, one but not all of the arguments the Plaintiff asserts in Count IV of the Complaint. That is the Plaintiff's argument that the UF Agreement is a "contract[] of adhesion," and is "void and unenforceable" for that reason.[38] But for reasons discussed in Part IV.D below, the Court finds that the Plaintiff has not yet plausibly pled that the UF Agreement is a contract of adhesion, in either Count IV or the Claim Objection.

**D. UF's other arguments about Count IV of the Complaint**

This brings the Court to some additional arguments that UF has made in seeking dismissal of Count IV. Even though the Court is dismissing Count IV of the Complaint, the Court will address these additional arguments, because otherwise they may recur later in this case.

First, UF argues that New York's usury law applies and that under New York law, the Plaintiff may not assert a claim for affirmative relief, including declaratory relief, based on a

---

[38] *See* Claim Objection (Docket # 76 in Case No. 25-50310) at ¶ 7.

15

claimed violation of New York's usury law.  To the extent Count IV seeks such relief, UF

argues, it fails to state a plausible claim.

While the "Wherefore" clause in Count IV prays for a declaration that the "MCA

Agreements violated state usury law and are therefore unenforceable," and the UF Agreement is

one of the "MCA Agreements," Count IV does not actually allege that the UF Agreement

violates any usury law.  The allegations in Count IV are stated against all six of the Defendant

MCA creditors, including UF, as a group, and the operative allegation in Count IV does not

actually allege that *the UF Agreement* violates any usury law:

> 48. **Many of the MCA Agreements** are governed by the laws of
> States which, under their usury laws, limit the amount of interest
> which can be charged to a borrower and **the interest rates being
> charged by some or all of the MCA Defendants** violate those
> laws.[39]

This allegation is not sufficient to state a plausible claim that the *UF Agreement* in particular

actually violates any state usury law.

Similarly, the Plaintiff's Claim Objection does not actually allege that the UF Agreement

violates any usury law.  The Claim Objection *could* do so, without running afoul of New York

law,[40] but it does *not* do so.

---

[39]  Compl. at ¶ 48 (emphasis added).

[40]  The Court discussed this issue in detail recently in opinions in two similar cases, also
involving New York's usury law.  The Court incorporates by reference its discussion in those cases, and
reiterates its rulings made in those cases.  There, the Court ruled that a corporate bankruptcy debtor in a
Chapter 11 case: (1) could not assert any claim or defense based on New York's *civil* usury statute; and
(2) could not assert any claim for affirmative relief based on New York's *criminal* usury statute; but (3)
could assert a violation of New York's criminal usury statute, NY CLS Penal § 190.40, as a *defense* to an
MCA creditor's claim, in the form of an objection to the creditor's proof of claim; and (4) if the debtor
was successful in defending against the creditor's claim, "'the usurious loan transaction is deemed void
and unenforceable, resulting in the uncollectability of both principal and interest.'"  *Heritage Collegiate
Apparel, Inc. v. Elemental Cap., Inc. (In re Heritage Collegiate Apparel, Inc.)*, 676 B.R. 773, 781-83

Two other arguments that UF makes in seeking dismissal of Count IV concern the allegations in Count IV that the UF Agreement "[is] unconscionable within the meaning of UCC § 2-302, and [is a] contract[] of adhesion."[41] UF argues that § 2-302 of the Uniform Commercial Code (the "UCC") does not apply to the UF Agreement, because UCC Article 2 generally does not apply. Rather, UF says, only UCC Article 9 applies. And UF argues that the Complaint does not allege sufficient facts to plausibly support a legal conclusion that the UF Agreement is either unconscionable or a contract of adhesion.[42]

The Court agrees with both of these arguments. First, UCC § 2-302 does not apply, because UCC Article 2 does not apply to the UF Agreement. This is so under both the New York version and the Michigan version of the UCC. Under UCC § 2-302(1), as enacted in both states,

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

N.Y. U.C.C. Law § 2-302 (McKinney); Mich. Comp. Laws Ann. § 440.2302(1). This section is in UCC Article 2, which "applies to transactions in goods." *See* N.Y. U.C.C. Law § 2-102(1)

---

(Bankr. E.D. Mich. 2026) (citation omitted); *Heritage Collegiate Apparel, Inc. v. Vault 26 Cap., LLC* (*In re Heritage Collegiate Apparel, Inc*.), 676 B.R. 875, 883-86 (Bankr. E.D. Mich. 2026) (citation omitted).

[41] Compl. at ¶ 47.

[42] UF raised these arguments for the first time in its reply brief in support of the Motion. *See* Defs.' Reply Br. (Docket # 40) at 5-6. Because UF did not raise these arguments when it filed the Motion or in its initial brief in support of the Motion, the Plaintiff did not have an opportunity to brief these arguments when it filed its written response to the Motion. But Plaintiff's counsel did have an opportunity to respond to these arguments during the hearing on the Motion, and did not do so.

(McKinney); Mich. Comp. Laws Ann. § 440.2101.  The UF Agreement is not a "transaction in goods" — for example, it is not a contract for the sale of goods.

Rather, UCC Article 9 applies to the UF Agreement.  That is because, among other things, UCC Article 9 applies to "a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract," and, with certain exceptions not applicable here,[43] UCC Article 9 applies to "a sale of accounts, chattel paper, payment intangibles, or promissory notes[.]"  N.Y. U.C.C. Law §§ 9-109(a)(1), 9-109(a)(3) (McKinney); *see also* Mich. Comp. Laws Ann. §§ 440.9109(1)(a) and 440.9109(1)(c).

For these reasons, UCC § 2-302 does not apply to the UF Agreement.

As for UF's other argument, the Court agrees that the Plaintiff's Complaint does not allege sufficient facts to plausibly support a legal conclusion that the UF Agreement is either

---

[43]  The exceptions that are not applicable include the following, as stated in the Michigan UCC statute:

> (4) This article does not apply to any of the following:
> . . .
>
> (d) A sale of accounts, chattel paper, payment intangibles, or promissory notes as part of a sale of the business out of which they arose.
>
> (e) An assignment of accounts, chattel paper, payment intangibles, or promissory notes that is for the purpose of collection only.
>
> (f) An assignment of a right to payment under a contract to an assignee that is also obligated to perform under the contract.
>
> (g) An assignment of a single account, payment intangible, or promissory note to an assignee in full or partial satisfaction of a preexisting indebtedness.
> . . . .

Mich. Comp. Laws Ann. §§ 440.9109(4); *see also* N.Y. U.C.C. Law §§ 9-109(d)(4) through 9-109(d)(7) (McKinney) (same).

unconscionable or a contract of adhesion.  (Nor does the Claim Objection do so).

"Under New York law, a contract is unconscionable when it is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable . . . according to its literal terms."  *McMahan v. Whaleco, Inc.*, No. 25-CV-1590 (MKB), 2026 WL 657449, at *10 (E.D.N.Y. Mar. 9, 2026) (citation omitted).  "Generally, there must be a showing that such a contract is both procedurally and [substantively] unconscionable. Procedural unconscionability requires an examination of the contract formation process and the alleged lack of meaningful choice while substantive unconscionability involves whether one or more key [contract] terms are unreasonably favorable to one party."  *Id.* (internal quotation marks and citations omitted).[44]

As for a contract of adhesion, under New York law,

"[t]he elements of a contract of adhesion are (1) a necessity of life;

---

[44]  Michigan law is similar to New York law on this subject.  Recently, the Michigan Supreme Court held:

> In Michigan, "'[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'"  In other words, in order for a contract to be unconscionable, it must be procedurally and substantively unconscionable.
>
> Procedural unconscionability exists when a weaker party has no "realistic alternative" but to accept the term. . . .
>
> Substantive unconscionability requires courts to analyze the reasonableness of the challenged term. A contract provision is substantively unreasonable if the inequity "shock[s] the conscience."

*Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754, at *16–17 (Mich. July 31, 2025) (footnotes omitted) (citations omitted).

19

(2) a contract for the excessive benefit of the offeror; (3) an economic or other advantage of the offeror; and (4) the offer of the proposed contract on a take-it-or-leave-it basis." "Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms." However, the fact that a form is offered on a take-it-or-leave-it basis, standing alone, is insufficient to render a contract invalid. Nor is mere disparity in bargaining power sufficient to show that a contract of adhesion exists. Rather, a party seeking to rescind an alleged contract of adhesion must show that the other party "used 'high pressure tactics' or 'deceptive language' or that the contract is unconscionable." Absent such a showing, a court will not interfere with an otherwise valid agreement.

*In re Vargas Realty Enters., Inc.*, 440 B.R. 224, 237–38 (S.D.N.Y. 2010) (citations omitted).[45]

The allegations in Count IV of the Complaint, that the UF Agreement is unconscionable and a contract of adhesion,[46] are nothing more than "legal conclusion[s] couched as factual allegations," and as such, they are insufficient, standing alone, to plausibly plead either unconsionability or adhesiveness. *Heritage Collegiate Apparel, Inc. v. Elemental Cap., Inc.,* 676 B.R. at 789 (citations omitted). "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (citations omitted). "The United States Supreme Court cases now ""require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]'"" *Id.* (quoting *Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 771 (Bankr. E.D. Mich. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

---

[45] Michigan law is similar to New York law on this subject. *See, e.g.*, *Rayford v. Am. House Roseville I, LLC*, No. 163989, 2025 WL 2177754, at *9 (Mich. July 31, 2025).

[46] Compl. at ¶ 47.

20

The Complaint does not allege sufficient facts to plausibly support the conclusion that the UF Agreement is unconscionable or a "contract of adhesion." The only facts alleged about the UF Agreement that may bear on this issue are that the terms of the agreement are "unreasonably favored to the drafter, and were non-negotiable."[47] That is insufficient. And in asserting that the UF Agreement is a "contract of adhesion," the Claim Objection does not plead any facts to support that legal conclusion.

For these additional reasons, Count IV of the Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### E. Count III and the Plaintiff's "legal impossibility" argument

As noted in Part II.D above, in Count III, the Plaintiff seeks a declaratory judgment that the UF Agreement "effected no sale or transfer of property,"[48] because the purported sale of the Plaintiff's future receipts and receivables was impossible. Plaintiff alleges that the Plaintiff's "future receipts and receivables did not exist at the time of the 'sale' of these items[, and a] present sale of rights to payment that do not exist is a metaphysical and legal impossibility."[49] UF disagrees with this argument, and the parties have briefed this issue somewhat during the course of this case. The Court has not yet ruled on this issue, however, and it is not necessary for the Court to rule on this issue now, for the following reasons.

First, UF's Motion did not seek dismissal of Count III based on the merits of this issue,

---

[47] Compl. at ¶ 46.

[48] *Id.* at pdf p. 18, "Wherefore" clause.

[49] *Id.* at pdf p. 17 ¶ 43.

21

but only for the reasons discussed in Part IV.A and IV.B of this Opinion, above.[50]

Second, although the Plaintiff raised the issue as part of its Claim Objection,[51] it is not necessary to decide that issue in ruling on the Claim Objection. That is because in its response to the Claim Objection, UF conceded that its claim is an unsecured claim, based on the binding effect of the confirmation of the Plaintiff's Chapter 11 Plan. UF views the confirmed Plan as having treated UF's claim as an unsecured claim.[52] UF's concession makes the legal impossibility issue moot, for purposes of the Claim Objection.

If the Plaintiff's legal impossibility argument were successful, for purposes of the Claim Objection, it would not result in the disallowance of UF's claim. At most, it would only result in a ruling that UF's claim is unsecured, because it would mean that UF's claim is not secured by any ownership interest or lien in the Plaintiff's accounts receivable or receipts. For purposes of ruling on the Claim Objection, the Court will accept UF's concession, that its claim is unsecured because of post-petition events in the Plaintiff's bankruptcy case. Based on that concession, the Plaintiff will obtain all the relief it could obtain in its Claim Objection based on merits of the legal impossibility argument. So that argument is moot, for purposes of the Claim Objection.

---

[50] UF only commented on this issue in the briefing on its Motion when it filed its reply brief, and in that reply brief cited no authority. *See* Defs.' Reply Br. (Docket # 40) at 5.

[51] And in its Claim Objection, the Plaintiff briefed the issue somewhat, by referring to a brief the Plaintiff filed early in the main bankruptcy case, in support of a cash collateral motion, and citing cases that were cited in that earlier brief. *See* Claim Objection (Docket # 76 in Case No. 25-50310) at 3 ¶ 8. The Plaintiff's earlier brief was filed in support of its cash collateral motion, on October 17, 2025 (Docket # 24 in Case No. 25-50310). But the Court entered interim and final cash collateral orders without the need to rule on this issue. (Docket ## 27, 51 in Case No. 25-50310). UF briefed the issue as part of its response to the Claim Objection. *See* [UF] Resp. to Debtor's [Claim Objection] (Docket # 107) at 7-12.

[52] *See* the discussion of the Plaintiff's Chapter 11 Plan, in Part II.F of this Opinion, above. As noted there, UF did not object to confirmation of the Plan.

That does not necessarily mean that the argument is moot for purposes of Count III of the Plaintiff's Complaint, however, because Count III focuses on the pre-petition status of UF's claim and its pre-petition rights under the UF Agreement. And Count III is supportive of the Plaintiff's preference claim in Count IX, as discussed in Part IV.B of this Opinion, above.

For the reasons discussed above, the Court will sustain the Plaintiff's Claim Objection in part, to the extent of ruling that UF's claim in the bankruptcy case is entirely a non-priority, unsecured claim. UF's claim is to be treated as part of the class of such claims (Class XI) under the Plaintiff's confirmed Chapter 11 Plan, based on the allowed amount of UF's claim, which amount remains to be determined.

## V. Conclusion and Order

For the reasons stated above, the Court enters the following order.

IT IS ORDERED that:

1. UF's Motion is granted to the extent of the relief provided in paragraphs 2-4 below, and otherwise is denied.

2. Count IV of the Plaintiff's Complaint is dismissed.

3. The dismissal of Count IV is without prejudice to the Plaintiff's right to file an amended complaint that complies with the requirements of this Order, below.

4. The Plaintiff is granted leave to file an amended complaint. Any such amended complaint must be filed, if at all, no later than June 30, 2026. Any such amended complaint must be consistent with the Court's Opinion, above.

5. If the Plaintiff does not file an amended complaint on or before June 30, 2026, the dismissal of Count IV of the Complaint will be deemed a dismissal with prejudice, and UF must file an

23

answer to the Plaintiff's Complaint (Docket # 1), no later than July 14, 2026. Alternatively, if the Plaintiff files an amended complaint on or before June 30, 2026, UF must file an answer to the Plaintiff's amended complaint no later than July 14, 2026.

6. The Plaintiff's Claim Objection is sustained in part, to the extent of the relief provided in paragraph 7 of this Order, below, and otherwise remains pending for further determination.

7. UF's claim in the Plaintiff's bankruptcy case is deemed, in its entirety, to be a non-priority, unsecured claim, to be treated as part of the class of such claims (Class XI) under the Plaintiff's confirmed Chapter 11 Plan, based on the allowed amount of UF's claim, which amount remains to be determined.

8. The Plaintiff is granted leave to file an amended claim objection. Any such amended claim objection must be filed in this adversary proceeding, rather than in the main bankruptcy case, and must be filed, if at all, no later than June 30, 2026. Any such amended claim objection must be consistent with the Court's Opinion, above.

9. If the Plaintiff files an amended claim objection, UF may file a written response to that amended claim objection. Such a written response is optional, but it must be filed, if at all, no later than July 14, 2026.

**Signed on June 16, 2026**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker**
**United States Bankruptcy Judge**