UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CLOVERLEAF ELECTRIC, LLC, *et al.*,[1]

Debtors.

Case No. 25-50310

Chapter 11
Jointly Administered

Judge Thomas J. Tucker

_______________________________/

CLOVERLEAF ELECTRIC, LLC,

Plaintiff,

v.

Adv. No. 25-4217

UNITED STATES SMALL BUSINESS ADMINISTRATION, *et al.*,

Defendants.

_______________________________/

**OPINION AND ORDER DENYING DEFENDANT UNITED FIRST, LLC'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. Introduction

This adversary proceeding presents a dispute between the Plaintiff, a Chapter 11 bankruptcy debtor, and a Defendant that provided financing to the Debtor pre-petition, under what is commonly known as a merchant cash advance agreement.

Now before the Court is the partial motion to dismiss the Plaintiff's First Amended Complaint, filed by Defendant United First, LLC ("UF") (Docket # 72, the "Motion"). The Plaintiff objected to the Motion, and the parties fully briefed the Motion. The Court held a hearing on the Motion, and then took the Motion under advisement. The Court has considered

[1] The Debtors in these jointly administered cases are Cloverleaf Electric, LLC (Case No. 25-50310) and Shawn Michael Hosner (Case No. 25-50313).

all of the written and oral arguments of the parties. For the reasons stated below, the Court will deny the Motion, in its entirety.

Also before the Court is an amended objection filed by the Plaintiff to the proof of claim filed by UF in the Plaintiff's bankruptcy case. The Court held a hearing on that amended claim objection, at the same time as the hearing on UF's Motion. Today the Court is filing a separate opinion and order regarding the amended claim objection.

**II. Background**

The Plaintiff filed its First Amended Complaint (Docket # 70, the "FAC") after the Court entered an Opinion and Order on June 16, 2026 (Docket # 66, the "June 16 Order"), ruling on UF's partial motion to dismiss the Plaintiff's initial complaint.[2] The June 16 Order granted UF's motion in part and denied it in part, and gave the Plaintiff leave to file an amended complaint.[3] After the Plaintiff did so, UF filed the present Motion.

The background and basic facts of this case are detailed in Parts I and II of the June 16 Order, and the Court incorporates that discussion into this Opinion by reference. The Court also incorporates by reference, and reiterates, the rulings the Court made in the July 16 Order, to the extent they are relevant to the Plaintiff's FAC and UF's present Motion.

UF's Motion seeks dismissal of certain Counts in the Plaintiff's FAC, in part under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted, and in part under Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction. These federal civil rules apply in

---

[2] The June 16 Order is published. *See Cloverleaf Elec., LLC v. United States Small Bus. Admin.* (*In re Cloverleaf Elec. LLC*), 679 B.R. 860 (Bankr. E.D. Mich. 2026).

[3] The June 16 Order also gave the Plaintiff leave to file an amended objection to UF's claim, which the Plaintiff then filed.

this adversary proceeding under Fed. R. Bankr. P. 7012(b).

## III. Standards governing Rule 12(b)(6) and Rule 12(b)(1) motions

As for the standards governing motions under Civil Rule 12(b)(6), the Court incorporates by reference and reiterates what it stated in Part III of the June 16 Order (citing *Wahrman v. Bajas* (*In re Bajas*), 443 B.R. 768, 770-72 (Bankr. E.D. Mich. 2011)). In short, "the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017) (citations omitted).

As for motions under Civil Rule 12(b)(1), the Court reiterates the following from one of its prior cases:

> Rule 12(b)(1) permits the defense of "lack of subject-matter jurisdiction" to be asserted by motion. Rule 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."
>
> "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir.2004). In this case, the parties do not dispute any of the facts relevant to the question of subject matter jurisdiction. Therefore, the Court will accept those facts as true for purposes of deciding the motion.
>
> In so doing, however, the Court is not bound to accept conclusions *of law* contained in the plaintiff's complaint, or to accept as true any "allegations or conclusions of law masquerading as factual allegations." *Roper v. Ford Motor Co.*, No. 1:09–cv–427, 2010 WL 2670827, at *1 (S.D.Ohio April 6, 2010) (citing *O'Bryan v. Holy See*, 556 F.3d 361, 376 (6th Cir.2009)).

*Swain v. United States Dep't. of Treasury, Internal Revenue Service* (*In re Swain*), 437 B.R. 549, 553 (Bankr. E.D. Mich. 2010) (italics in original).

In this case, in the words of *Swain* quoted above, UF "attack[s] the claim of jurisdiction on its face," based on the allegations of the FAC, so "all allegations of the [FAC] must be considered as true" for purposes of the Rule 12(b)(1) Motion, other than conclusions of law.

**IV. The UF Agreement and the six counts in the Plaintiff's FAC**

All of the counts in the FAC relate to an agreement between the Plaintiff and UF, entitled "Purchase and Sale of Future Receipts Agreement" (the "UF Agreement").[4] The parties entered into the UF Agreement on April 15, 2025.[5] This Court described the UF Agreement in detail in Part II.B of the June 16 Order. Briefly stated, according to the UF Agreement, UF purchased $576,702.00 of the Plaintiff's "Future Receipts," for a purchase price of $398,000.00.[6] The UF Agreement defined "Future Receipts," in pertinent part, as "the proceeds of each future sale made by [the Plaintiff]" and "all remittances received by [the Plaintiff], or its right to receive such remittances, in the ordinary course of [the Plaintiff's] business, including but not limited to (a) remittances made by cash, check, Automated Clearing House . . . or other electronic transfer; (b) remittances, or rights to remittances, made by credit card, debit card, bank card, charge card . . .; (c) accounts and remittance intangibles; and (d) remittances made by any other form."[7]

---

[4] A copy of the UF Agreement is attached to the Plaintiff's FAC (Docket # 70) as Exhibit A, at pdf pp. 22-35).

[5] *See* FAC (Docket # 70) at 3 ¶ A.10; UF Agreement (Docket # 70) at pdf p. 22 (defining April 15, 2025 as the "Contract Creation Date").

[6] *See* UF Agreement (Docket #70) at pdf p. 23.

[7] *Id.*

Even though the UF Agreement states that it is a true purchase of Future Receipts and not a loan, the Plaintiff contends that the UF Agreement, in reality, was for a loan, and a wholly unsecured and usurious loan at that. UF disputes this. But UF's present Motion seeks dismissal of counts in the Plaintiff's FAC based on other issues.

The Court will briefly describe each of the counts in the Plaintiff's FAC, including ones not directly at issue in UF's present Motion.

In Count I, the Plaintiff seeks a declaratory judgment that the UF Agreement is a loan transaction, rather than a sale, "subject to the laws applicable to and governing loans."[8]

In Count II, the Plaintiff seeks a declaratory judgment that the UF Agreement "constituted an unsecured loan transaction (not a sale or transfer of property),"[9] because the purported sale of the Plaintiff's Future Receipts and receivables was impossible. That is because, the Plaintiff alleges, the "Plaintiff's [F]uture [R]eceipts and receivables did not exist when the [UF] Agreement was entered into[, and a] present sale of rights to payment that do not exist is a metaphysical and legal impossibility."[10] And, the Plaintiff alleges, to the extent UF "seeks to assert a lien in the proceeds of Plaintiff's future accounts receivable, the attempted lien of such an asset is a legal fallacy."[11]

In Count III, the Plaintiff seeks a declaratory judgment that the UF Agreement is unenforceable, because it "constitutes a procedurally and substantively unconscionable contract

---

[8] *See* FAC (Docket # 70) at 6 ¶¶ 26-27.

[9] *Id.* at 9 ("Wherefore" clause in Count II).

[10] *Id.* at 8 ¶¶ 30-31.

[11] *Id.* at 8 ¶ 32.

of adhesion under New York law," and that the UF Agreement "is also unenforceable and void because the interest rate charged violates New York's usury laws."[12]

In Count IV, the Plaintiff seeks to avoid, under 11 U.S.C. § 547(b), and recover, under 11 U.S.C. § 550(a)(1), alleged preferential transfers made by the Plaintiff to UF during the 90 day pre-petition period, totaling $120,591.00.[13]

In Count V, which the Plaintiff pleads "in the alternative to Count IV," the Plaintiff seeks avoidance of (i) the Plaintiff's purported debt to UF under the UF Agreement, and (ii) all the payments the Plaintiff made to UF under the UF Agreement, totaling $242,982.00, as a constructively fraudulent obligation and constructively fraudulent transfers, respectively, under 11 U.S.C. § 548(a)(1)(B). And the Plaintiff seeks recovery, under 11 U.S.C. § 550(a), of the allegedly fraudulent transfers.[14]

Finally, In Count VI, the Plaintiff seeks the disallowance of any claim by UF, on two grounds: first, because any such claim "include[s] unmatured interest which must be disallowed pursuant to 11 U.S.C. § 502(b)(2)[;]" and second, under 11 U.S.C. § 502(d), because of the Plaintiff's avoidance claims.[15]

**V. Discussion of UF's Motion**

UF's Motion seeks dismissal of Counts III, IV, V, and part of Count VI. The Court will discuss UF's arguments as to each count separately, beginning with Count IV.

---

[12] *Id.* at 15 ¶¶ 71-72.

[13] *See id.* at 4-5 ¶¶ 19-20, 16 ¶¶ 74-78, 17 ("Wherefore" clause in Count IV).

[14] *See id.* at 17-18 & n.3, 18 ¶¶ 81-83.

[15] *See id.* at 19 ¶¶ 85-88.

### A. Count IV — the claim for avoidance and recovery of preferential transfers

Count IV of the FAC states a claim for avoidance, under 11 U.S.C. § 547(b),[16] and recovery, under 11 U.S.C. § 550(a)(1),[17] of nine transfers the Plaintiff made to UF during the 90

---

[16] Section 547(b) states, in pertinent part:

> [T]he trustee may . . . avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and
>
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

[17] Under § 550(a)(1), with certain exceptions not applicable here,

> to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

days before the Plaintiff filed its bankruptcy petition. The Plaintiff alleges that these transfers, totaling $120,591.00, were payment of an antecedent debt owing to UF.[18] That antecedent debt, which the Plaintiff alleges was based on a loan that was wholly unsecured, arose from the UF Agreement. Under that April 15, 2025 UF Agreement, UF "purported to purchase $576,702.00 of [the Plaintiff's] 'Future Receipts' . . . in exchange for $398,000.00, less a 3% Origination Fee . . . totaling $11,940.[00]."[19] Plaintiff alleges that it made a total of $242,982.00 in payments on this debt to UF, in 18 installments over the period from May 2, 2025 through September 12, 2025.[20] Allegedly, the last nine of these payments, totaling $120,591.00, were made during the 90-day preference period.[21]

UF argues that Count IV must be dismissed, without prejudice, for lack of subject matter jurisdiciton. UF's Motion does not dispute that the FAC has adequately pled each of the elements for avoiding the nine transfers as preferential under 11 U.S.C. § 547(b). Rather, UF argues that under the Plaintiff's allegations, the Plaintiff suffered no "concrete injury in fact" from making the nine transfers at issue, and therefore lacks "Article III standing" to pursue its preference claim.[22]

---

11 U.S.C. § 550(a)(1).

[18] *See* FAC (Docket # 70) at 5 ¶¶ 20, 16 ¶¶ 74-77.

[19] *Id.* at 3 ¶ 11.

[20] *See id.* at 4 ¶ 19.

[21] *See id.* at 4-5 ¶ 20.

[22] Def.'s Br. in Supp. (Docket # 72) at pdf p. 17; *see also* Def's Br. in Supp. (Docket # 72) at pdf p. 8 (citing FAC (Docket # 70) at 4-5 ¶¶ 19-20).

UF argues:

> Although § 547 creates a statutory cause of action, Plaintiff must still allege a concrete injury in fact caused by the Transfers it seeks to avoid. *Soehnlen v. Fleet Owners Insurance Fund*, 844 F.3d 576, 581–82 (6th Cir. 2016).
>
> Avoidance claims belong to the bankruptcy estate. Accordingly, a debtor-in-possession must establish that the challenged transfers injured the estate by depleting or diminishing assets. *In re O'Gorman*, 115 F.4th 1047, 1054 (9th Cir. 2024). . . . .
>
> The First Amended Complaint does not allege that the [UF] transaction depleted the estate.[23]

UF's no-injury argument is based on the following. The FAC alleges that under the UF Agreement, on April 15, 2025 UF advanced to the Plaintiff a total of $386,060.00 ($398,000.00 minus the $11,940.00 Origination Fee). By comparison, the Plaintiff's later payments back to UF during the preference period totaled only $120,591.00, and all 18 of the Plaintiff's payments to UF totaled only $242,982.00. Because UF's advance to the Plaintiff of $386,060.00 exceeded the total of all of the Plaintiff's payments back to UF by $143,078.00, UF says, the Plaintiff was not injured and the estate was not depleted, but rather obtained a net benefit from the transaction with UF. And, UF says, this is even more the case if one compares the UF advance of $386,060.00 with just the total of the Plaintiff's payments to UF during the preference period of $120,591.00 — in that comparison, the Plaintiff's net benefit from the UF transaction was a positive $265,469.00. Thus, UF says, the Plaintiff suffered no "concrete injury" that would give it Article III standing to pursue its preference claim against UF, and this Court lacks jurisdiction over that claim.

---

[23] *Id.*

UF's argument is flawed, and the Court must reject it. In the preference context under § 547(b), the Plaintiff does not need to show that *the entire transaction* with UF, over the entire history of the loan, depleted the bankruptcy estate. Rather, what matters is simply that the *transfer(s) made during the preference period* were payments of an antecedent debt, and that those transfers depleted the estate. And that form of depletion is adequately pled in the FAC, which alleges that during the 90-day preference period (July 16, 2025 to October 14, 2025), the Plaintiff paid $120,591.00 on an antecedent debt (which arose months earlier, on April 15, 2025). That amount would have been part of the Plaintiff's bankruptcy estate, available for the payment of creditors generally, if the Plaintiff had not spent it.

This type of depletion is sufficient to qualify as an "injury in fact" that is "concrete and particularized" so as to confer Article III constitutional standing under the general principles established by Supreme Court and Sixth Circuit cases (none of which are bankruptcy cases). *See, e.g., Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-41 (2016);[24] *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581-82 (6th Cir. 2016).[25]

---

[24] Under *Spokeo*, Article III standing requires that "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). UF's Motion disputes only the first of these elements.

[25] *Soehnlin*, which the Sixth Circuit decided shortly after the Supreme Court's decision in *Spokeo*, stated the Article III standing elements in this way:

> To satisfy Article III's standing requirements, a plaintiff must show: "(1) [he] has suffered an 'injury-in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Soehnlin*, 844 F.3d at 581 (citations omitted).

UF's counsel admitted during the hearing that UF's Article III standing argument is a "novel argument." UF has cited no preference case that supports it, and the Court is not aware of any such case. The cases UF has cited, which involved avoidance under other Bankruptcy Code sections, simply confirm that depletion of the bankruptcy estate is sufficient to establish an injury for purposes of Article III standing.[26]

If UF's standing theory were accepted, it would have the effect of obliterating § 547. One of the elements for avoidance of a transfer under § 547(b) is that the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer was made[.]" 11 U.S.C. § 547(b)(2). UF's theory would immunize, from § 547 avoidance, any transfer made during the preference period that was payment of an antecedent debt. If the transfer was less than the balance owing on the antecedent debt, or even equal to it, then under UF's theory, the creditor could prevail simply by arguing that over the entire history of the loan transaction the bankruptcy estate was not depleted. And in an unusual case where the transfer was an overpayment of a debt, to the extent of the overpayment, the transfer could not be considered to be a preference, because the transfer could not be considered a payment for antecedent debt.

In effect, acceptance of UF's standing theory would mean that no one would ever have

---

[26] UF has cited two cases under other Bankruptcy Code avoidance provisions, which merely stand for the proposition that standing requires that the transfer(s) at issue depleted the bankruptcy estate. *See The Lovering Tubbs Tr. v. Hoffman* (*In re O'Gorman*), 115 F.4th 1047, 1056 (9th Cir. 2024) (requiring, and finding, Article III standing in a fraudulent transfer avoidance action under Bankruptcy Code § 548, because the transfer "depleted the assets in the estate" causing "an injury-in-fact" to the estate that was "redressable by the avoidance sought [in that case]"); *Abbott v. Arch Wood Prot., Inc.* (*In re Wood Treaters, LLC*), 491 B.R. 591, 595-98 (Bankr. M.D. Fla. 2013) (requiring, but not finding, Article III standing in an action to avoid several unauthorized post-petition transfers under Bankruptcy Code § 549, because the trustee failed to prove that the transfers depleted the bankruptcy estate by diminishing the value of the estate).

Article III standing to pursue avoidance of a preference under § 547. But UF's theory cannot be correct, especially given the long and continuing history in bankruptcy law of actions to avoid preferences.

The authority of courts to "avoid preferential transfers and to recover the transferred property . . . has been a core aspect of the administration of bankrupt estates since at least the 18th century." *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 372 (2006) (citations omitted). As the Supreme Court has explained,

> Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy.

*Begier v. I.R.S.*, 496 U.S. 53, 58 (1990) (citations omitted).

For these reasons, the Court must reject UF's novel standing theory,[27] and the Court will not dismiss Count IV of the FAC.

**B. Count V — the claim for avoidance of the Plaintiff's debt under the UF Agreement and all of the Plaintiff's payments on that debt, as a constructively fraudulent obligation and constructively fraudulent transfers under Bankruptcy Code § 548(a)(1)(B)**

---

[27] If UF's standing theory were correct, it could mean that in a great many preference cases that have been successfully prosecuted to judgment in recent years across the country, the judgment now might be subject to attack because the bankruptcy court lacked jurisdiction, a flaw that is not waivable. *See Ogle v. Church of God*, 153 F. App'x 371, 374 (6th Cir. 2005) (citation omitted) ("Parties cannot consent to subject matter jurisdiction where it is lacking, nor can they waive it."); Fed. R. Civ. P. 12(h)(3) (made applicable in bankruptcy adversary proceedings by Fed. R. Bankr. P. 7012(b)); Fed. R. Civ. P. 60(b)(4) (made applicable in bankruptcy cases by Fed. R. Bankr. P. 9024(a)) (providing for relief from a judgment that is "void"); *but see Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. 155, 157 (2026) (a motion for relief from judgment on that ground that is is void due to lack of proper service of process must be made within a reasonable time).

As noted above, Count V of the FAC seeks avoidance of (i) the Plaintiff's purported debt to UF under the UF Agreement, and (ii) all the payments the Plaintiff made to UF under the UF Agreement, totaling $242,982.00, as a constructively fraudulent obligation and constructively fraudulent transfers, respectively, under 11 U.S.C. § 548(a)(1)(B).[28] And the Plaintiff seeks recovery, under 11 U.S.C. § 550(a)(1), of the allegedly fraudulent transfers.

Under Count V, the Plaintiff's theory, which the Court finds to be plausibly alleged, is that even though UF advanced $386,060.00 to the Plaintiff under the UF Agreement, any obligation by the Plaintiff to repay UF under that agreement is unenforceable, void, and avoidable, for reasons described below. As a result, the Plaintiff contends it owed UF no debt, so that the $242,982.00 in payments the Plaintiff made to UF cannot be considered "satisfaction . . . of a present or antecedent debt of the debtor," within the meaning of 11 U.S.C. § 548(d)(2)(A).[29] Therefore, the Plaintiff contends, it received no "value" whatsoever, within the meaning of

---

[28] That section states, in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> . . ..
>
> (B) (i) received less than a **reasonably equivalent value** in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> . . . .

11 U.S.C. § 548(a)(1)(B) (bold added). As noted above, the Plaintiff pleads Count V in the alternative to Count IV.

[29] That section states, in pertinent part: "(A) 'value' means . . . satisfaction . . . of a present or antecedent debt of the debtor[.]" 11 U.S.C. § 547(d)(2)(A).

§ 548, in exchange for the payments it made to UF. As a result, the Plaintiff received "less than a reasonably equivalent value in exchange for" any of the payments, within the meaning of 11 U.S.C. § 548(a)(1)(B)(i). This is what makes the $242,982.00 in payments to UF avoidable as constructively fraudulent transfers under 11 U.S.C. § 548(a)(1)(B), according to the Plaintiff.

Plaintiff's FAC alleges the following three grounds to support its contention that the UF Agreement is unenforceable, void, and avoidable. These grounds are articulated in Counts III and V of the FAC. The Plaintiff alleges that the UF Agreement is unenforceable because it is an "unconscionable contract of adhesion under New York law" (Count III); that the UF Agreement is "unenforceable and void because the interest rate charged violates New York's usury laws" (Count III); and that the UF Agreement is avoidable as a constructively fraudulent obligation under 11 U.S.C. § 548(a)(1)(B) (Count V).

Of these three grounds, however, the Plaintiff's brief appears to have limited the criminal usury law violation allegation to seeking the disallowance of UF's proof of claim. The Plaintiff therefore appears to have disclaimed the usury allegation as a basis for supporting the fraudulent obligation avoidance claim in Count V. *See* Part V.C.1 of this Opinion, below.

UF makes several arguments in seeking dismissal of Count V. The Court will consider each argument below.

**1. UF's standing argument**

First, UF argues that the Plaintiff lacks Article III standing, because it suffered no injury from making the $242,982.00 in transfers to UF. This, UF says, is because the Plaintiff's transaction with UF, considered in its entirety, "left Plaintiff with a net benefit of $143,078.00."[30]

---

[30] Def's. Br. in Supp. (Docket # 72) at pdf p. 19.

Here UF's argument views the entire history of the UF Agreement transaction. UF calculates that its April 15, 2025 advance to the Plaintiff ($386,060.00) exceeded the total of the payments back to UF the Plaintiff later made, during the period May 2, 2025 to September 12, 2025 — 18 payments totaling $242,982,00. Because of the Plaintiff's "net benefit" of $143,078.00, UF argues, the Plaintiff did not suffer an injury that would give it Article III standing.

The Court must reject UF's argument, for reasons similar to those for rejecting the same argument about the Plaintiff's preference claim (Count IV), discussed above. The Plaintiff adequately alleges that each payment to UF depleted the bankruptcy estate, because under the Plaintiff's theory, each time the Plaintiff made one of the 18 payments to UF, the Plaintiff paid money in exchange for nothing of value in return. There was no value in return, the Plaintiff contends, because the Plaintiff did not owe any debt to UF when the payments were made. And the amount of the Plaintiff's payments to UF would have been part of the Plaintiff's bankruptcy estate, available for payment to creditors generally, if the Plaintiff had not spent it.

This type of estate depletion, like the depletion caused by the preferential transfers alleged in Count IV, is sufficient to qualify as an "injury in fact" that supports Article III standing. *See Sommers v. Capybara Cap., LLC* (*In re Anadrill Directional Servs., Inc.*), No. 25-3036, 2026 WL 305023 (Bankr. S.D. Tex. Feb. 4, 2026), at *6 ("[T]o demonstrate constitutional standing to bring an avoidance action, the plaintiff must 'prov[e] the estate suffered an injury as a result of the transfers.' One way to establish an injury to the estate is to show that transfers to the defendant depleted estate assets.") (footnotes and citations omitted).
UF has cited no case holding otherwise.

The Plaintiff's theory for avoiding fraudulent transfers, of course, depends on the Plaintiff

establishing that even though UF provided $386,060.00 in financing to the Plaintiff on April 15, 2025, the Plaintiff had no enforceable obligation to pay that money back to UF. There may well be reasons why the Plaintiff cannot establish this, including reasons not argued in the UF Motion. For example, Bankruptcy Code § 548(c) ultimately might doom the Plaintiff's claim that its repayment obligation under the UF Agreement is avoidable under § 548(a)(1)(B). Section 548(c) states:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, **a** transferee or **obligee of such a** transfer or **obligation that takes for value and in good faith** has a lien on or may retain any interest transferred or **may enforce any obligation incurred**, as the case may be, **to the extent that such** transferee or **obligee gave value to the debtor in exchange for such** transfer or **obligation**.

11 U.S.C. § 548(c) (emphasis added). This section provides an affirmative defense to avoidance of a transfer or obligation, which UF would bear the burden of pleading and proving. *See, e.g., Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P.* (*In re Bayou Group, LLC*), 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007) (citations omitted). Because it is an affirmative defense, the Plaintiff does not have the burden of negating it in order for the FAC to state a claim under Rule 12(b)(6). *See id.*

UF has not yet pled or argued that affirmative defense, but it may do so in the future. If it does, presumably, UF will argue that when it advanced the $386,060.00 in financing to the Plaintiff in exchange for the Plaintiff's undertaking its payment obligations under the UF Agreement, UF "gave value to the debtor in exchange for such . . . obligation[s]" and did so "in good faith," within the meaning of § 548(c). If UF succeeds in proving this defense under § 548(c), including its good faith, then the Plaintiff's obligation to repay UF will not be avoidable

as a fraudulent obligation under § 548, at least to the extent of an obligation by the Plaintiff to repay $386,060.00. But such a result would still leave the other grounds, alleged by the Plaintiff in Count III, for claiming that any payment obligation the Plaintiff otherwise would have under the UF Agreement is unenforceable — unconscionability and usury.

In any case, with respect to Count V, UF's possible affirmative defense under § 548(c) is not now before the Court.

**2. UF's argument that the FAC does not plausibly allege that the Plaintiff received less than reasonably equivalent value in exchange for the payment obligation**

Next, UF argues that the Plaintiff fails to plausibly allege that the Plaintiff received less than reasonably equivalent value in exchange for undertaking the payment obligation in the UF Agreement.[31] UF argues that "Count V does not explain why the $386,060[.00 the] Plaintiff received from [UF] was less than reasonably equivalent to the Obligation it incurred," and that Count V "does not allege the fair or market value of the Obligation when the [UF] Agreement was executed[.]"[32]

It is true that Count V does not specifically allege what the "fair or market value" was of the Plaintiff's obligation under the UF Agreement to pay UF $576,702.00. But the Plaintiff does allege facts plausibly supporting the conclusion that the $386,060.00 the Plaintiff received from UF was less than reasonably equivalent to the Plaintiff's $576,702.00 payment obligation. The

---

[31] UF also complains that Count V combines both a claim for avoidance of the obligation under the UF Agreement and a claim for avoidance of the transfers the Plaintiff made to UF under that agreement. *See* Def.'s Br. in Supp. (Docket # 72) at pdf pp. 19-20. But there is nothing wrong with seeking both forms of avoidance in the same count, so that is no basis for dismissing Count V under Rule 12(b)(6).

[32] *Id*. at pdf p. 21.

Plaintiff is correct in characterizing the FAC as alleging that the UF Agreement "immediately stripped value from an already insolvent debtor by imposing a repayment obligation that exceeded the value received by $190,000[.00], exclusive of fees and default provisions."[33] And according to the FAC, the UF Agreement imposes what amounts to "an annual interest rate of approximately 54%."[34]

Considering the "net effect of" this exchange "on the debtor's estate, the funds available to the unsecured creditors," the Plaintiff has stated a plausible claim that it received less than reasonably equivalent value for undertaking the payment obligation in the UF Agreement. *See generally Congrove v. McDonald's Corp.* (*In re Congrove*), 222 Fed. App'x. 450, 454 (6th Cir. 2007) (citation omitted).

**3. UF's other arguments about avoidance of the Plaintiff's obligation under the UF Agreement**

UF also argues that Count V fails to state a claim for avoidance of the Plaintiff's obligation under the UF Agreement, because Count V fails to allege the following things:

> [Count V] does not . . . identify what portion of the Obligation was allegedly unsupported by value, or explain why the entire Obligation should be avoided notwithstanding the substantial funding Plaintiff admittedly received.[35]

But the Plaintiff is not required to allege either of these things. Rather, it is sufficient to plausibly allege, as the Plaintiff does, that the Plaintiff incurred the obligation in exchange for less than reasonably equivalent value. *See* 11 U.S.C. § 548(a)(1)(B)(i). That is enough to

---

[33] Pl.'s Resp. Br. (Docket # 73) at 11.

[34] FAC (Docket # 70) at 3 ¶ 14.

[35] Def's. Br. in Supp. (Docket # 72) at pdf p. 21.

support the avoidance of the entire obligation, if the other elements of § 548(a)(1)(B) are established, subject to the possible affirmative defense under § 548(c), described above. And as noted above, the Plaintiff does not need to rebut the § 548(c) affirmative defense in its FAC in order to state a claim for Rule 12(b)(6) purposes.

For these reasons, the Court must reject UF's arguments for dismissing Count V.

**C. Count III — the claim seeking a declaratory judgment that the UF Agreement is unenforceable, because it is unconscionable, and because it violates New York's usury law**

As noted above, in Count III, the Plaintiff seeks a declaratory judgment that the UF Agreement is unenforceable, because it "constitutes a procedurally and substantively unconscionable contract of adhesion under New York law," and that the UF Agreement "is also unenforceable and void because the interest rate charged violates New York's usury laws."[36]

UF seeks dismissal of Count III in its entirety. The Court will discuss UF's arguments regarding usury first, then UF's arguments regarding unconsionability.

**1. Count III's request for a declaratory judgment that the UF Agreement violates New York's criminal usury statute is viable because it supports the Plaintiff's amended claim objection.**

UF argues that Count III fails to state a viable claim, to the extent it seeks a declaratory judgment that the UF Agreement violates New York's criminal usury statute. UF argues that under New York law, the Plaintiff may not assert a claim for affirmative relief, including declaratory relief, based on a claimed violation of New York's usury law. UF acknowledges, however, that the "Plaintiff may assert any legally available criminal-usury defense against

---

[36] FAC (Docket # 70) at 15 ¶¶ 71-72.

[UF's] proof of claim . . . ."[37]

The Plaintiff responds that it "asserts criminal usury strictly as an affirmative defense to Defendant's Proof of Claim (Claim No. 22) through the consolidated claim objection."[38]

As limited in that way, Count III is viable, because it supports the Plaintiff's amended claim objection, which has been consolidated with this adversary proceeding.

In the June 16 Order, this Court discussed UF's argument about the defense of criminal usury, and reiterated its holdings from prior cases, as follows:

> The Court discussed this issue in detail recently in opinions in two similar cases, also involving New York's usury law. The Court incorporates by reference its discussion in those cases, and reiterates its rulings made in those cases. There, the Court ruled that a corporate bankruptcy debtor in a Chapter 11 case: (1) could not assert any claim or defense based on New York's *civil* usury statute; and (2) could not assert any claim for affirmative relief based on New York's *criminal* usury statute; but (3) could assert a violation of New York's criminal usury statute, NY CLS Penal § 190.40, as a *defense* to an MCA creditor's claim, in the form of an objection to the creditor's proof of claim; and (4) if the debtor was successful in defending against the creditor's claim, "'the usurious loan transaction is deemed void and unenforceable, resulting in the uncollectability of both principal and interest.'" *Heritage Collegiate Apparel, Inc. v. Elemental Cap., Inc.* (*In re Heritage Collegiate Apparel, Inc.*), 676 B.R. 773, 781-83 (Bankr. E.D. Mich. 2026) (citation omitted); *Heritage Collegiate Apparel, Inc. v. Vault 26 Cap., LLC* (*In re Heritage Collegiate Apparel, Inc.*), 676 B.R. 875, 883-86 (Bankr. E.D. Mich. 2026) (citation omitted).

(June 16 Order (Docket # 66) at 16-17 n.40) (italics in original). The Court reiterates these holdings now.

---

[37] Def's. Br. in Supp. (Docket # 72) at pdf p. 25.

[38] Pl.'s Resp. Br. (Docket # 73) at 14 (record citation omitted).

The Plaintiff's amended claim objection seeks disallowance of UF's claim filed in the bankruptcy case on several grounds, including the ground that "the [UF] Agreement is unenforceable and void because the interest rate charged violates New York's usury laws."[39] This is also alleged in Count III of the FAC.[40] To this extent, Count III supports the Plaintiff's amended claim objection, and is viable as a defense to UF's proof of claim. The Court previously ordered the amended claim objection to be consolidated into this adversary proceeding. For these reasons, the Court will not dismiss this part of Count III, even though it duplicates the Plaintiff's amended claim objection.

**2. Count III's request for a declaratory judgment that the UF Agreement is unenforceable, because it is unconscionable under New York law, is adequately supported by the allegations of Plaintiff's FAC.**

**a. UF's argument that the FAC still does not adequately plead a plausible claim**

UF argues that the FAC fails to plead sufficient facts to plausibly support the claim that the UF Agreement is unenforceable as an unconscionable contract. In the June 16 Order, the Court discussed the Plaintiff's earlier version of this claim, contained in the Plaintiff's original complaint, and found it wanting under Rule 12(b)(6). (*See* June 16 Order (Docket # 66) at 17-21). The Court incorporates and reiterates its discussion in the June 16 Order of the applicable law. In addition, the Court notes that under New York law, "[i]n general, an unconscionable contract has been defined as one which is so grossly unreasonable as to be unenforc[a]ble because of an absence of meaningful choice on the part of one of the parties together with

---

[39] Debtor's Am. Obj. to Claim No. 22 Filed by UF (Docket # 75, and Docket # 117 in Case No. 25-50310) at 3 ¶ 10.

[40] *See* FAC (Docket # 70) at 15 ¶ 72.

contract terms which are unreasonably favorable to the other party." *King v. Fox*, 7 N.Y.3d 181, 191 (N.Y. 2006) (citation omitted).

In response to the Court's June 16 Order, the Plaintiff filed its FAC, which added many substantial new factual allegations. The Court concludes that the FAC is sufficient to state a plausible claim that the UF Agreement is unconscionable under New York law. The Court agrees with the Plaintiff's argument to this effect,[41] and disagrees with UF's contrary argument.[42]

Moreover, UF appears to have abandoned its contrary argument in the course of briefing and arguing its Motion. In its reply brief in support of the Motion, and at the hearing on the Motion, UF did not respond to the Plaintiff's detailed written arguments about why the FAC plausibly pleads that the UF Agreement is unconscionable. Instead, in its reply brief and at the hearing, UF made only an entirely new argument about Count III, which is discussed in the next section of this Opinion.[43]

In any event, the FAC alleges sufficient facts to plausibly plead that the UF Agreement is both procedurally and substantively unconscionable. In support of the charge of procedural unconscionability, as the Plaintiff accurately summarizes, the FAC alleges that UF:

> • drafted the [UF] Agreement as a standardized, preprinted form contract;
>
> • refused to negotiate any material term of the [UF] Agreement;
>
> • conditioned funding upon execution of the [UF] Agreement without modification;

---

[41] *See* Pl.'s Resp. Br. (Docket # 73) at 15-19.

[42] *See* Def's. Br. in Supp. (Docket # 72) at pdf pp. 26-27.

[43] *See* Def's. Reply Br. (Docket # 76) at 3-5.

• possessed vastly superior bargaining power and industry expertise concerning merchant cash advance transactions;

• knew Plaintiff was in severe financial distress and required immediate working capital;

• exploited Plaintiff's financial condition by insisting upon execution of its non-negotiable form agreement; and

• presented the transaction on a take-it-or-leave-it basis.[44]

In support of the charge of substantive unconscionability, as the Plaintiff accurately summarizes, the FAC alleges that the UF Agreement:

• guarantees repayment regardless of actual receivable collections;

• permits Defendant to increase the Specified Percentage to 100% upon default;

• grants Defendant unilateral authority to convert weekly payments into daily withdrawals;

• renders the purported dispute and reconciliation mechanisms entirely illusory;

• requires Plaintiff to surrender real-time access to its banking information;

• authorizes Defendant to contact Plaintiff's personal and business references as part of its collection efforts;

• permits Defendant to interrogate Plaintiff's financial institutions without judicial process;

• grants Defendant sweeping waivers of privacy rights and tort claims;

• authorizes self-help remedies permitting seizure of merchant processing proceeds and bank account funds;

• accelerates the entire alleged purchased amount upon default;

---

[44] Pl.'s Resp. Br. (Docket # 73) at 15-16 (citing FAC (Docket # 70) at 9-10 ¶¶ 34-42).

• prohibits Plaintiff from obtaining alternative financing or changing its banking relationships without Defendant's consent;

• requires litigation in New York at Defendant's election;

• waives Plaintiff's right to a jury trial and class participation; and

• allocates virtually all economic risk to Plaintiff while preserving virtually all economic benefit to Defendant.[45]

These allegations are sufficient to state a plausible claim that the UF Agreement is unconscionable and therefore unenforceable under New York law.

**b. UF's new argument, that under New York law, the Plaintiff may not assert a claim for affirmative relief, including declaratory relief, based on a claim of unconscionability**

In the reply brief it filed in support of the Motion, UF argued for the first time that under New York law, a debtor may not seek affirmative relief, including declaratory relief, that a contract is unconscionable.[46] Rather, according to UF, such an argument may only be used as "a defense to enforcement, not an independent cause of action for affirmative relief."[47] In support of this argument, UF cites the following cases applying New York law: *Streamlined Consultants, Inc. v. EBF Holdings LLC*, No. 21-CV-9528 (KMK), 2022 WL 4368114, at *6 (S.D.N.Y. Sept. 20, 2022); *Colonial Funding Network, Inc. for TVT Cap., LLC v. Epazz, Inc.*, 252 F. Supp. 3d 274, 287 (S.D.N.Y. 2017); *Ng v. HSBC Mortg. Corp.,* No. 07-CV-5434, 2011 WL 3511296, at *8 (E.D.N.Y. Aug. 10, 2011); and *Fortune Limousine Serv., Inc. v. Nextel Commc'ns*, 826 N.Y.S.2d 392, 354 (N.Y. App. Div. 2006). None of these are bankruptcy cases.

---

[45] *Id.* at 17-18 (citing FAC (Docket # 70) at 10-15 ¶¶ 43-71).

[46] *See* Def's. Reply Br. (Docket # 76) at 3-5.

[47] *Id.* at 4.

The Court will not dismiss this part of Count III, however, based on this argument, for at least two reasons. The first reason is that UF waived this argument, for purposes of the present Rule 12(b)(6) Motion, by failing to make the argument when it moved to dismiss the Plaintiff's *original complaint* under Rule 12(b)(6). The Plaintiff could have made this argument as one of its arguments for seeking dismissal of the Plaintiff's original complaint, which contained a count (Count IV) alleging unconscionability.[48] But UF did not make this argument, even though it made other Rule 12(b)(6) arguments about unconscionability, including the argument that "the Complaint does not allege sufficient facts to plausibly support a legal conclusion that the UF Agreement is either unconscionable or a contract of adhesion."[49] As a result, UF has waived its new argument, *for purposes of its present Rule 12(b)(6) Motion*. *See* Fed. R. Civ. P. 12(g)(2) and 12(h)(1)(A), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7012(b). Rule 12(g)(2) states that, with certain exceptions not applicable here, "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from the earlier motion." Fed. R. Civ. P. 12(g)(2). And Rule 12(h) reinforces this point — it says that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by: (A) omitting it from a motion in the circumstances described in Rule 12(g)(2)[.]" Fed. R. Civ. P. 12(h)(1)(A).[50]

A second reason why the Court will not dismiss this unconscionability part of Count III is

---

[48] *See* Compl. (Docket # 1) at 18-19 (Count IV).

[49] June 16 Order (Docket # 66) at 17 (footnote omitted) (citation omitted).

[50] While this defense is waived for purposes of UF's present Rule 12(b)(6) Motion. UF still may raise this Rule 12(b)(6) argument in an answer to the Plaintiff's FAC, in a motion for judgment on the pleadings, or at trial. *See* Fed. R. Civ. P. 12(h)(2).

that at a minimum, unconscionability may be used as a defense to UF's proof of claim. In this way, Count III supports the Plaintiff's amended claim objection, which seeks disallowance of UF's claim on several grounds, including that the UF Agreement is "unconscionable and unenforceable under New York law."[51]

**3. An unresolved issue lurking in Count III — namely, the extent to which Count III can support the Plaintiff's effort in Count V to avoid its payments to UF as constructively fraudulent transfers**

As noted above, and as this Court has ruled in other cases recently, if the Plaintiff succeeds in showing, in defending against UF's proof of claim, that the UF Agreement violates New York's criminal usury law, then under New York case law, "'the usurious loan transaction is deemed void and unenforceable, resulting in the uncollectability of both principal and interest.'" *Heritage Collegiate Apparel, Inc. v. Elemental Cap., Inc.* (*In re Heritage Collegiate Apparel, Inc.*), 676 B.R. 773, 781-83 (Bankr. E.D. Mich. 2026) (quoting *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 325-26 (N.Y. App. Div. 2021)); *Heritage Collegiate Apparel, Inc. v. Vault 26 Cap., LLC* (*In re Heritage Collegiate Apparel, Inc.*), 676 B.R. 875, 883-86 (Bankr. E.D. Mich. 2026) (same).

If the Plaintiff succeeds in its criminal usury defense, the Plaintiff's obligation to pay under the UF Agreement will be deemed void *ab initio* — *i.e.*, from its inception. *See Adar Bays, LLC*, 37 N.Y.3d at 323-25 (answering "in the affirmative" the question "[w]hether [c]riminally [u]surious [c]ontracts are [v]oid [a]b [i]nitio"), 333 ("[T]he legislature intended for criminally usurious loans made to corporate borrowers to be void when a successful usury

---

[51] Debtor's Am. Obj. to Claim No. 22 filed by UF (Docket # 75, Docket # 117 in Case No. 25-50310) at 3 ¶ 10.

defense, based on the criminal usury rate, is raised[,]" and such loans "are subject to the same consequences as any other usurious loans: complete invalidity of the loan instrument."); *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254 (S.D.N.Y. 2022) (underlining in original) (citation omitted) ("Where the interest rate exceeds the criminal usury rate, a corporation may interpose an affirmative defense of usury and, if successful, obtain a declaration that invalidates the debt instrument ab initio."); *Sommers v. Capybara Capital, LLC*, 2026 WL 305023, at *9 (italics in original) (footnotes omitted) (Under New York law, loans that are criminally usurious are "void *ab initio*" and "[a] contract that is void has no legal effect and creates no enforceable rights or obligations."); Black's Law Dictionary 1568 (7th ed. 1999) (defining "void ab initio" to mean "[n]ull from the beginning, as from the first moment when a contract is entered into").[52]

A similar conclusion might follow if the Plaintiff succeeds in showing, in defending against UF's proof of claim, that the UF Agreement is unenforceable because it is unconscionable. *See King v. Fox*, 7 N.Y. 3d at 191 (citation omitted) (Unconscionable contracts "are usually voidable since a party to a contract has the power to validate or ratify the contract, as well as the power to avoid it."). But the parties have not briefed that particular question yet, so the Court will not decide that question at this stage of the case.

---

[52] During the hearing, UF's counsel argued that if the UF Agreement were deemed to be criminally usurious and therefore void, such a ruling would apply only prospectively, so that the Plaintiff simply would have no payment obligation going forward. But, UF's counsel argued, that would not affect the Plaintiff's obligation as to payments already made — *i.e.*, that would not make the Plaintiff's payment obligation void *ab initio*. UF has cited no case that supports that argument. During the hearing UF's counsel cited only *Adar Bays*, but that case held, as noted above, that criminally usurious loans are "void ab initio." And the other cases cited above also held that the criminally usurious obligation is deemed void *ab initio* under New York law.

A question that would arise from the conclusion that the UF Agreement is void *ab initio* is what effect it would have on the Plaintiff's effort, in Count V of the FAC, to avoid its payments to UF as contructively fraudulent transfers. If the Plaintiff's payment obligation under the UF Agreement is deemed void *ab initio*, arguably that would mean that the Plaintiff owed no debt to UF when the Plaintiff made the 18 payments to UF, totaling $242,982.00. And if that is so, that would mean that the Plaintiff's payments to UF must be deemed to have been in exchange for no value (such as payment of an antecedent debt), and therefore in exchange for less than reasonably equivalent value. If the foregoing string of conclusions were established, it could be used to support the Plaintiff's effort in Count V to avoid and recover all of its payments to UF, as constructively fraudulent transfers.

It is not clear that using such a theory for avoiding and recovering the Plaintiff's payments to UF would or could be barred by New York law. It may be that the Plaintiff cannot use New York law *directly* to recover the payments it made to UF, that is, as *relief under New York law*, for a violation by UF of the New York criminal usury statute, or as *relief under New York common law* for UF making an unconscionable contract. Awarding such relief directly under New York law arguably would run afoul of the rule argued by UF, that under New York law, a party may only invoke the criminal usury statute or the common law concept of unconscionability defensively, rather than to seek affirmative relief.

But that attempted use of New York law directly to recover the Plaintiff's payments to UF is different than using *the consequences*, under New York law, of a usury violation or a finding of unconscionability (voidness and unenforceability of the UF Agreement), collaterally, as a basis for obtaining relief under provisions of federal bankruptcy law — in this case the

Bankruptcy Code's fraudulent transfer avoidance and recovery provisions, 11 U.S.C. §§ 548(a)(1)(B) and 550(a). New York law may lead to the conclusion that the UF Agreement is void *ab initio* and unenforceable, and New York law may supply the reasons for that conclusion. But once that state law conclusion is made, it is not clear that New York law would or could prevent a federal bankruptcy court from applying federal Bankruptcy Code avoidance provisions to that state law conclusion.

At this stage of the case, the parties have not yet sufficiently briefed these issues, so the Court will not discuss them further at this time, except to note the following. It appears that so far, at least, the Plaintiff has abandoned the possibility of using criminal usury (but not unconscionability) as a basis to support its fraudulent transfer claim. Instead, the Plaintiff appears to have decided to use criminal usury only to try to obtain the disallowance of UF's proof of claim. *See* Part V.C.1 of this Opinion, above.

For the reasons stated above, the Court will deny UF's request for dismissal of Count III.

**D. Count VI — the claim seeking disallowance of UF's claim under Bankruptcy Code §§ 502(b)(2) and 502(d)**

As noted above, in Count VI, the Plaintiff seeks the disallowance of any claim by UF, on two grounds: first, because any such claim "include[s] unmatured interest which must be disallowed pursuant to 11 U.S.C. § 502(b)(2)[;]" and second, under 11 U.S.C. § 502(d), because of the Plaintiff's avoidance claims.[53]

UF seeks dismissal of Count VI in part — namely the part that seeks disallowance of UF's claim under § 502(d). That section provides, in pertinent part, for the disallowance of "any

---

[53] *See* FAC (Docket # 70) at 19 ¶¶ 85-88.

claim of any entity from which property is recoverable under section . . . 550, . . . or that is a transferee of a transfer avoidable under section . . . 547 [or] 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title." 11 U.S.C. § 502(d).

UF argues that because the Plaintiff's avoidance counts under §§ 547 and 548 (Counts IV and V) must be dismissed, the Court also should dismiss the § 502(d) part of Count VI. The Court must reject this argument, however, because the Court is denying UF's request for dismissal of Counts IV and V.

## VI. Conclusion and Order

For the reasons stated above, the Court enters the following order.

IT IS ORDERED that UF's Motion (Docket # 72) is denied, in its entirety.

**Signed on November 10, 2026**

**/s/ Thomas J. Tucker**

**Thomas J. Tucker**
**United States Bankruptcy Judge**